

**Zwerling, Schachter & Zwerling, LLP**
Counselors at Law

**Jeffrey C. Zwerling**
jzwerling@zsz.com

January 3, 2006

41 Madison Avenue
New York, NY 10010
tel. 212•223•3900
fax 212•371•5969

<u>BY FACSIMILE AND E-FILING</u>

The Honorable Richard Owen
United States District Judge
United States Courthouse
40 Centre Street, Room 2903
New York, New York 10007-1581

New York
Long Island
Seattle
Boca Raton

          Re:   <u>In re Doral Financial Corp. Sec. Litig., 1:05-md-01706 - RO</u>

Dear Judge Owen:

      We are counsel for the 1199SEIU Health Care Employees Pension Fund ("1199SEIU Fund"), proposed lead-plaintiff in the above-referenced action. We write to respond to the letter dated December 20, 2005 submitted to this Court by the Argent Funds ("Argent"). There are several issues raised in Argent's letter that require clarification.

      Despite Argent's submission of a form order in *In re Adelphia Communications Corp. Securities & Derivative Litig.*, 03 MD 1529 (LMM) (S.D.N.Y. Dec. 5, 2003), the fact still remains that proposed lead plaintiffs who engage in arbitrage trading are *not* appropriate lead plaintiffs.[1] See *In re Bank One Shareholders Class Actions*, 96 F.Supp.2d 780, 783-84 (N.D.Ill. 2000) (rejecting hedge-fund investor based, in part, on trading strategies that rendered it inadequate); *In re Critical Path, Inc.*, 156 F. Supp. 2d 1102, 1109-1110 (N.D.Ca. 2001). The reason for this is that, unlike the ordinary

---

[1] In any event, *Adelphia* is irrelevant to this case because there, unlike here, Argent presumably filed a timely motion for appointment as lead plaintiff. In this case, Argent never moved to be appointed lead plaintiff for the entire class, but simply suggested in its brief, more than eighteen days *past* the deadline for filing such motion, that the Court grant Argent lead plaintiff status for the entire action. The PSLRA makes it mandatory that all motions for appointment as lead plaintiff must be made within sixty days of the first-published notice. 15 U.S.C. § 78u-4(a)(3)(A)(i). See, e.g., Skwortz v. Crayfish Co., Ltd., 2001 WL 1160745, *5 (S.D.N.Y. 2001) ("The 60 day period the statute provides for the submission of lead counsel motions is mandatory."); In re Telxon Corp., Sec. Litig., 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action.").

www.zsz.com



**Zwerling, Schachter & Zwerling, LLP**
Counselors at Law

Honorable Richard Owen
January 3, 2006
Page 2

member of the class, arbitrage funds do not typically invest in securities based on a belief that their value will increase. Rather, as Argent does (and must) concede, arbitrage funds engage in trading strategies based on perceived mis-pricing of correlated securities (usually of the same issuer). As a result, the losses of an arbitrage fund on any particular security are generally offset, in whole or in part, by its gains on other securities related investments.

Here, Argent had massive gains on its short sales of Doral common stock -- gains totaling approximately $3.6 million dollars. It is *axiomatic* that an investor such as Argent with gains in common stock cannot represent the interests of common stock investors who lost money purchasing such artificially inflated shares. *See In re Critical Path, Inc.*, 156 F. Supp. 2d at 1109-1110.

Argent, in its oral argument, noted that all claims should be considered together if the investors in one type of instrument have claims that are typical of the investors in the other type of instrument. By its own argument, Argent should not be appointed lead plaintiff on behalf of the common stock purchasers, as it is a net gainer in its common stock transactions and does not have claims typical of the investors in the common stock. (Lead Plaintiff Hearing Transcript, December 15, 2005 at Tr. p. 44)

This case primarily concerns losses sustained by Doral's common stock purchasers. There are currently approximately 108 million shares of Doral common stock issued and outstanding and the value of those shares declined by more 78% than from their 2005 high to today. In contrast, there are only 1.38 million shares of Doral's 4.75% preferred stock and those shares have declined by approximately 14% from its 2005 high to today. Accordingly, the vast majority of the class which consists of investors who lost money on their common stock purchases, should not be represented by an investor such as Argent, that actually profited from a decline in the value of Doral's common stock.

In addition, Argent is unsuitable to represent Doral's common stock investors because these class members will need to (and will be able to) rely upon the fraud-on-the-market theory to overcome the reliance requirement of Section 10(b) of the Exchange Act of 1934. *See Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). However, members of the class who purchased Doral preferred stock will be subjected to a serious challenge by defendants that the market for Doral's preferred stock was not efficient, a fact suggested by Argent's own trading. In an eighteen-month period, Argent traded 1.064 million of the total 1.38 million preferred shares issued and outstanding. Defendants will argue that Argent, and other institutional convertible-arbitrage funds, controlled and dominated the trading in Doral's preferred stock in a possibly illiquid and inefficient market. There is a great risk therefore, that Argent will not be able to advance the fraud-on-the-market theory on behalf of the class. *See In re Livent Inc. Noteholders Securities Litig.*, 211 F.R.D. 219, 222 (S.D.N.Y. 2002)(court rejected

N:\DORAL FINANCIAL\CORRES\2006\0103JCZ-01.doc

**Zwerling, Schachter & Zwerling, LLP**
Counselors at Law

Honorable Richard Owen
January 3, 2006
Page 3

application of the efficient-market theory because the fixed income securities were held largely by institutional investors and were not traded actively in a large public market). The overwhelming majority of this Class that traded in the efficiently traded common stock of Doral should not be subjected to this potential deficiency.

Accordingly, because of their profits on Doral common stock ($3.6 million) and the unique defenses raised by Argent's atypical trading strategies, as well as the trading profits made by the Teachers Retirement System of Louisiana as a net seller and net gainer (greater than $2 million) on Doral common stock, we respectfully request that the motions of Argent and Teachers Retirement System of Louisiana be denied and 1199SEIU Fund, the only lead plaintiff movant to have suffered net losses on substantial purchases of Doral common stock, be appointed lead plaintiff for the class.

Respectfully,

ZWERLING, SCHACHTER &
ZWERLING, LLP
Attorneys for 1199 SEIU Fund

By: *Jeffrey C. Zwerling*
Jeffrey C. Zwerling

JCZ/jm
Enclosure

cc: All counsel via electronic filing