USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/8/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In re   DORAL FINANCIAL CORPORATION     :    OPINION & ORDER
           SECURITIES LITIGATION                    :    05 MDL 1706 (RO)

----------------------------------------------------------X

OWEN, District Judge:

On December 15, 2005, this Court, acting pursuant to a transfer order from the U.S. Judicial Panel on Multidistrict Litigation and Rule 42(a) of the Federal Rules of Civil Procedure, consolidated twenty-four related securities fraud actions filed against Doral Financial Corporation[1] and certain of its directors and officers, alleging a scheme of systematic accounting fraud designed to inflate the company's financial statements.[2]

Numerous parties in the class action stockholder suits filed competing motions for appointment of lead plaintiff and designation of lead counsel. As of the December 15th hearing before me on the issue, the movants and their proposed counsel, in no particular order, are as follows:

First, the 1199SEIU Health Care Employees Pension Fund (hereinafter the *1199SEIU Fund*), represented by Zwerling, Schachter & Zwerling, LLP. This large union pension fund

---

[1] Doral is a diversified financial services company that is engaged in mortgage banking, commercial banking, institutional securities (broker-dealer) operations and insurance agency activities in the United States and Puerto Rico. Doral's core business includes the origination, purchase, sale and servicing of mortgage loans on single-family residences. It is the largest residential mortgage lender in Puerto Rico, and is the parent company of Doral Bank, Doral Securities, Doral Insurance Agency, Inc., and Doral Bank FSB.

[2] There were eighteen class action stockholder suits: *Finn v. Doral*, 05-cv-4014; *Faverman v. Doral*, 05-cv-4026; *Simons v. Doral*, 05-cv-4074; *Grobler v. Doral*, 05-cv-4077; *Galaxy Electronics Corp. v. Doral*, 05-cv-4087; *Orchinik v. Doral*, 05-cv-4098; *Bernie v. Doral*, 05-cv-4113; *Vu v. Doral*, 05-cv-4141; *Faith v. Doral*, 05-cv-4233; *Borger v. Doral*, 05-cv-4250; *Lapat v. Doral*, 05-cv-4294; *Scheiner v. Doral*, 05-cv-4413; *Barich v. Doral*, 05-cv-4973; *Janicek v. Doral*, 05-cv-5212; *Gagov v. Doral*, 05-cv-5213; *Deerfield Beach Non-Uniformed Municipal Employees Retirement Plan v. Doral*, 05-cv-9298; *Garcia-Flores v. Doral*, 05-cv-9299; *Argent Classic Convertible Arbitrage Fund (Bermuda) Ltd. v. Doral*, 05-cv-5565. There were five shareholder derivative actions: *Gavov v. Levis*, 05-cv-5248; *Freeborn v. Levis*, 05-cv-5250; *Rosenbaum Capital, LLC v. Levis*, 05-cv-5486; *Heimann v. Levis*, 05-cv-5548; *Corwin v. Levis*, 05-cv-9045. And there was one individual-plaintiff suit, which has since moved for severance: *Jordan v. Doral*, 05-cv-8882.

1

based in New York City purchased 66,900 shares of Doral stock, and asserts a net loss of $678,342.45 during the class period, which it submits is May 15, 2000 to May 26, 2005. See Hr'g Tr. 7; Speirs Aff., Ex. A.

Second, the *Veiseh Group*, composed of five individual investors: Afshin S. Veiseh; Nicholas J. Gaeta; John G. Diffley; Jerry M. Jackson; and Desmond L. Murphy, represented by Stull, Stull & Brody. During its asserted class period of May 15, 2000 to April 19, 2005, this group purchased 10,200 shares of Doral common stock, and suffered estimated losses of $206,852.46. I deem the group's motion for appointment as lead plaintiff and counsel abandoned, for failure to appear at the December hearing on the issue.

Third, the *TRSL Group*, comprised of four pension funds and two individual investors: The Teachers' Retirement System of Louisiana, the International Union of Operating Engineers Local 825 Pension Fund, the New Jersey Carpenters Pension and Annuity Funds, The Washington State Plumbers and Pipefitters Pension Plan, David Shearer (individually and on behalf of Alice and Marjorie Shearer), and John D. Burgener. This group is represented by the law firms of Grant & Eisenhofer P.A., Milberg Weiss Bershad & Schulman LLP, and Schiffrin & Barroway, LLP. During its asserted class period of October 10, 2002 to April 19, 2005, this group of unrelated plaintiffs suffered losses of approximately $4,449,578, broken down as follows: TRSL – $2,303,915; Operating Engineers – $1,291,588; NJ Carpenters – $236,050; WA State Plumbers & Pipefitters – $185,761; Shearer – $301,108; Burgener – $131,156.

Fourth, the *Institutional Investor Group*, composed of three institutional investors and one individual investor: West Virginia Investment Management Board; Central States, Southeast and Southwest Areas Pension Fund; Administracion de Compensaciones por Accidentes; and Angel A. Burckhart, represented by Lerach Coughlin Stoia Geller Rudman & Robbins LLP.

During its asserted class period of May 15, 2000 to May 26, 2005, this group purchased 391,167 shares of Doral securities at a cost of over $12.9 million, and asserts losses of over $4.05 million, as follows: WV Investment Management Board – $1,917,729; Administracion de Compensaciones – $1,001,333; Central States – $598,570; Burckhart – $536,918. At the hearing, this group withdrew its motion for appointment as lead plaintiff and counsel, in support of the TRSL Group, noting that, should this court find the TRSL Group inadequate for any reason, the Institutional Investor Group stands ready, willing and able to serve. See Hr'g Tr. 3.

Fifth, the *Argent Funds*, comprising: Argent Classic Convertible Arbitrage Fund (Bermuda) Ltd.; Argent Lowlev Convertible Arbitrage Fund Ltd.; and Argent Classic Convertible Arbitrage Fund, L.P., represented by Kirby McInerney & Squire, LLP. The Argent action, unlike any of the others, was filed by investors in Doral's 4.75% Preferred Stock, and seeks certification of a putative (sub)class of similarly-situated investors who purchased this preferred stock, during the class period of September 29, 2003 to April 19, 2005.[3] Having invested in excess of $284 million in the 4.75% Preferred Stock (having purchased 1,064,600 shares, selling 986,000 shares, and holding 78,600 shares), and having suffered losses of between $8.4 million and $9.1 million (calculations differ for claims brought pursuant to §10(b) and §11 of the Securities Exchange Act of 1934), the *Argent Funds* believe they have the largest financial stake in the claims possessed by investors in Doral's 4.75% Preferred Stock. Lead plaintiffs for separate "niche" classes, however, need not be appointed at this time. See In re Enron Corp. Sec.

---

[3] These plaintiffs argue that purchasers of this specific Doral security face factual and legal issues significantly different than those presented by the other actions. The Argent action asserts claims under §11 of the Securities Act of 1933 for alleged material misrepresentations made in the Registration Statement and Prospectus for this preferred stock. The claims asserted do not require any showing of *scienter*. Common stock investors have no standing to assert such claims. Furthermore, the analysis of damages differs markedly from the analysis required for the §10(b) claims presented in the other actions.

3

Litig., 206 F.R.D. 427, 451 (S.D.Tex. 2002); Weinberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 253-54 (S.D.N.Y. 2003).

The Private Securities Litigation Reform Act of 1995 (PSLRA), providing the requirements for lead plaintiff and lead counsel, was enacted to address perceived abuses in securities fraud class actions created by lawyer-driven litigation, and thus, was specifically designed to ensure that "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs counsel." In re Oxford Health Plans, Inc., Sec. Litig., 182 F.R.D. 42, 43-44 (S.D.N.Y.1998) (quoting H.R. Conf. Rep. No. 104-369). Thereby, the statute creates a rebuttable presumption[4] that the "most adequate plaintiff," *inter alia*, "in the determination of the court, has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."[5] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)-(cc); see also In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. at 49.

With the exception of the *1199SEIU Fund*, which is a single-party movant, the putative plaintiffs have aggregated themselves into "groups" of otherwise unrelated investors, and their *collective* financial interest is thus calculated. Nothing before this Court indicates that these random cumulations of plaintiffs are anything more than an effort to achieve the highest possible "financial interest" figure to be chosen, which, however, also cumulates case control problems

---

[4] Other members of the purported class may rebut the presumption by offering "proof" that "the presumptively most adequate plaintiff – (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

[5] Rule 23 provides, in relevant part, the prerequisites to a class action: "One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

4

and rival disagreements, resulting in delay and increased expense. I reject this approach as essentially inconsistent with the intention of the PSLRA. As I have recently noted, based on earlier precedent, by allowing attorneys to designate otherwise unrelated plaintiffs as a purported "group," and by allowing unrelated groups to aggregate investments in an effort to generate the "largest financial interest," a strong possibility emerges that lawyers will form such groups to manipulate the selection process, and thereby gain control of the litigation. See In re: Pfizer Inc. Sec. Litig., --- F.R.D. ---, 2005 WL 2759850 (S.D.N.Y.2005); In re Razorfish Sec. Litig., 143 F.Supp.2d 304, 306-07 (S.D.N.Y.2001); In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156, 157-58 (S.D.N.Y.1997) (refusing to allow unrelated plaintiffs to aggregate losses and serve as lead plaintiff, noting that "Congress [in enacting the PSLRA] hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff."); In re Telxon Corp. Sec. Litig., 67 F.Supp.2d 803, 813-16 (N.D.Ohio 1999) ("[T]he context and structure of the PSLRA evince an intent that a 'group' consist of more than a mere assemblage of unrelated persons who share nothing in common other than the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorney or attorneys."). Moreover, the statute itself states simply that the most adequate plaintiff "is the person or *group* of persons," 15 U.S.C. §78u-4(a)(3)(B)(iii)(I) (emphasis added), deemed to have the largest financial interest in the relief sought – but it does *not* say "*groups*" of persons, which obviously could easily result in substantial multiplication of costs and consequent diminution of stockholder recovery.

The noticed class period was from October 2, 2002 through April 18, 2005. The first filed action in this district, *Finn v. Doral*, No. 05-cv-4014 (S.D.N.Y. filed April 21, 2005), alleges a class period of January 17, 2001 through April 18, 2005. The most inclusive class period – May 15, 2000 through May 26, 2005 – is alleged by both the *1199SEIU Fund* and the

5

*Institutional Investor Group*, and appears in the action *Gagov v. Doral*, No. 05-cv-5213 (S.D.N.Y. filed May 31, 2005). The *TRSL Group* argues fervently in favor of the abbreviated class period of October 10, 2002 through April 19, 2005, which it asserts was "taken from the class action lawsuit filed on March 10, 2005 titled *Robert Hillman et al. v. Doral Corp., et al*, No. 05-cv-2732 (S.D.N.Y. filed March 10, 2005)," and stated further that "[t]he first filed action, *Cox v. Doral Corp.*, No. 05-cv-02637 (S.D.N.Y. filed March 7, 2005) uses a shorter class period of January 17, 2001 to March 3, 2005." See Memorandum of Law in Support of TRSL Group's Mot., 2 n.3. These are, however, all wrong and come from another class action lawsuit – *not* Doral – and are actually entitled *Hillman v. Delphi Corp.* and *Cox v. Delphi Corp.*, respectively, and appear to be consolidated as *In Re Delphi Corp. Securities Litigation* before another judge of this Court. Furthermore, the class period actually asserted in the *Hillman* complaint is April 12, 2000 through March 3, 2005, and the erroneous interjection of these dates and cases raise a troublesome eyebrow as to the threshold reliability of the *TRSL Group* and its counsel.[6]

For the purpose of determining lead plaintiff, I find that the use of the longer, most inclusive class period of May 15, 2000 through May 26, 2005 is proper, as it encompasses more potential class members, and, according to ¶ 9 and ¶ 31 of the *Gagov* complaint, is the beginning and end date of the period in which Doral allegedly had been improperly reporting its results due to the improper valuation of floating rate interest-only strips.

---

[6] The abridged class period submitted by the *TRSL Group* does, in fact, appear in several complaints in the Doral matter, though none of which is the first-filed action. See *Simons v. Doral*, 05-cv-4074; *Bernie v. Doral*, 05-cv-4113; *Faith v. Doral*, 05-cv-4233; *Scheiner v. Doral*, 05-cv-4413.

6

The PSLRA does not provide guidance for the calculation of a potential lead plaintiff's financial loss. Here, the relative magnitude of each of the parties' losses is fuzzied by various competing estimates, unclear methodology,[7] and myriad proposed class periods.

Courts have used a number of factors to evaluate adequacy. See Malasky v. IAC/Interactivecorp, 2004 WL 2980085 (S.D.N.Y. Dec. 21, 2004). Given the probable margins of error involved in the various damage estimates before the Court, including loss calculations from at least five different class periods, TRSL and West Virginia Investment Management Board have roughly equal damages. However, I conclude that West Virginia Investment Management Board, which purchased 184,725 shares and suffered losses exceeding $1.9 million, though slightly lower than TRSL's, is the more adequate and preferable of the two plaintiffs,[8] and accordingly, name it alone as lead plaintiff, to minimize control problems and expense. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v); see, e.g., In re Crayfish Co. Sec. Litig., 2002 WL 1268013, at *6 (S.D.N.Y. June 6, 2002). West Virginia Investment Management Board has moved, along with the others in the *Institutional Investor Group*, for the appointment of the single law firm Lerach Coughlin Stoia Geller Rudman & Robbins LLP as lead counsel. I therefore designate this firm as lead counsel, while reserving the right hereafter to modify the lead counsel structure in the best interests of the class.

---

[7] It is unclear, for example, whether all of the parties calculated using the "Last In First Out" (LIFO) methodology, as opposed to FIFO. The latter has fallen out of favor in this District, given its tendency to overstate the losses of institutional investors and to understate gains made from stock sold during the class period. See In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95 (S.D.N.Y. 2005).

[8] This large institutional investor has served as lead plaintiff in several securities class actions, and also meets the adequacy requirements of the PSLRA and Rule 23. It is precisely the type of plaintiff envisioned under the PSLRA.

7

So Ordered.

Dated: New York, New York
February 8, 2006

_____
United States District Judge